[No. 29215-3-I. Division One. December 16, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. RHONDA MONETTE GOODRICH, *Appellant.*

---

72

*Colleen O'Connor* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Michael Lang, Deputy,* for respondent.

BAKER, J. — Rhonda Goodrich appeals from her conviction for murder in the second degree. She contends that the court's instructions did not completely inform the jury of the elements of second degree felony murder and self-defense, and that her conviction for second degree felony murder could not be based on an underlying charge of second degree assault. We find no error in the instructions as given. We

hold that the victim was not a participant in the assault as a matter of law and that second degree felony murder can be based on an underlying assault. We affirm.

## FACTS

Goodrich, along with some friends, was at the home of the victim, Steven L. Steel. An argument ensued involving Goodrich, Steel, and another woman named "Coco". Goodrich took Steel's gun away from Coco and locked it and the ammunition in her car. The argument continued and Steel demanded his gun saying, "You know that gun could put me in jail." Following the argument over the gun, Carl Lewis saw Goodrich looking through her car trunk. Lewis heard Steel open the front door and say, "You don't want to go to jail." Goodrich pulled the gun and fired at Steel, fatally injuring him.

Two days earlier Goodrich had driven Steel and Lewis to Kent where they retrieved the gun from some bushes. Steel had told Goodrich about his role in a burglary in which a mutual friend was killed and that he was wanted by the FBI for a murder in another state. Lewis testified that Steel cleaned and test-fired the gun in the presence of Goodrich.

Goodrich testified that she decided to return the gun to Steel and went to her car to retrieve it. As she walked back to the house, Steel approached. Goodrich could not see his right hand and wondered if he had a weapon. Goodrich claimed that she fired the gun intending to scare Steel.

In the "to convict" instruction, the jury was told it could find Goodrich guilty either of intentional murder or felony murder based on an underlying assault in the second degree. The jury found Goodrich guilty only of felony murder. Jury instruction 7 provided, in part:

### ALTERNATIVE B

Or in the alternative, to convict the defendant of the crime of murder in the second degree, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about the 13th day of February, 1991, Steven Steel was killed;

(2) That the defendant was committing the crime of Assault in the Second Degree;

(3) That the defendant caused the death of Steven Steel in the course of and furtherance of such crime; and

(4) That the acts which caused the death of the decedent occurred in King County, Washington.

Goodrich proposed and appeals from the denial of a jury instruction which included the additional element "[t]hat Steven Steel was not a participant in the crime".[1]

The court instructed the jury on self-defense as follows:

NO. 14

It is a defense to the assault element of the charge of Murder in the second degree/felony murder (Alternative B) that the force used was lawful as defined in this instruction.

The use of force upon or toward the person of another is lawful when used by a person who reasonably believes that she is about to be injured in preventing or attempting to prevent an offense against the person, and when the force is not more than is necessary.

The person using the force may employ such force and means as a reasonably prudent person would use *under the same or similar conditions as they appeared to the person, taking into consideration all of the facts and circumstances known to the person at the time of and prior to the incident.*

The State has the burden of proving beyond a reasonable doubt that the force used by the defendant was not lawful.

(Italics ours.) The court rejected the following instruction proposed by Goodrich:

INSTRUCTION NO. ___

In judging Rhonda Goodrich's actions you should attempt to place yourself in her position at the time of the incident. You should therefore consider her past and present knowledge, her beliefs, the relative size and strength of the participants, Rhonda Goodrich's words and actions prior to the incident, and all other factors bearing on the reasonableness of the defendant's actions and her apprehensions at the time as they appeared to her.

I

Goodrich argues that the jury should have been instructed that it had to find that the victim was not a participant in the assault which was the underlying felony for the felony murder alternative. RCW 9A.32.050(1)(b) provides:

(1) A person is guilty of murder in the second degree when:
. . . .

---

[1]This instruction would have been essentially the same as WPIC 27.04 (Supp. 1986).

(b) He commits or attempts to commit any felony other than those enumerated in RCW 9A.32.030(1)(c), and, in the course of and in furtherance of such crime or in immediate flight therefrom, he, or another participant, causes the death of a person *other than one of the participants*[.][2]

(Italics ours.) The State concedes that the nonparticipant element was omitted from the instructions.

■■ The victim of an assault is not a participant in that assault for purposes of RCW 9A.32.050(1)(b). *See State v. Brigham*, 52 Wn. App. 208, 210, 758 P.2d 559, *review denied*, 111 Wn.2d 1026 (1988); *State v. Langford*, 67 Wn. App. 572, 579-80, 837 P.2d 1037 (1992), *review denied*, 121 Wn.2d 1007 (1993). In *Brigham* the defendant and the victim were "engaged in an escalating physical conflict" with the victim the more aggressive of the two until the defendant produced a knife and stabbed the victim to death. *Brigham*, 52 Wn. App. at 209. Brigham was convicted of second degree felony murder based on the underlying assault felony. On appeal the defendant contended that he could not be guilty of felony murder because the victim was a participant. The court disagreed. "The facts also show that [the victim] was not a 'participant' in the assault upon himself; he may have started the fight which led to his death, but he was not a 'principal or accomplice' in the assault." *Brigham*, 52 Wn. App. at 210 (citing *State v. Toomey*, 38 Wn. App. 831, 840, 690 P.2d 1175 (1984), *review denied*, 103 Wn.2d 1012, *cert. denied*, 471 U.S. 1067 (1985)). The court held that because the victim was not a participant, the omission of the nonparticipant element from the instructions was harmless error. *Brigham*, 52 Wn. App. at 210.

In *Langford* the victim and the defendant's son had been in an earlier fight. The defendant father (Langford) told his son to fight the victim again. With Langford's encouragement, the son fought with the victim and when the victim "was getting the better of him in the fight, [the son] reached into his back pocket, pulled out a knife, and stabbed [the

---

[2]This section is often referred to as the "felony murder rule".

victim] in the chest." *Langford*, 67 Wn. App. at 577. Langford was found guilty as an accomplice to second degree felony murder. *Langford*, 67 Wn. App. at 576-77. On appeal Langford contended that it was error to not instruct the jury that it must find that the victim was not a participant in the crime that caused his death. The court held that it was harmless error to omit the element of nonparticipation.[3] The victim was not a participant in the stabbing and it was the stabbing that killed the victim. *Langford*, 67 Wn. App. at 579.

The present case is not distinguishable from *Langford* or *Brigham*. If the victim in *Brigham*, as the more aggressive party in a physical struggle with the defendant, was not a participant in his own stabbing, then Steel was clearly not a participant in his own shooting simply by virtue of the earlier argument with Goodrich. We hold that the victim was not a participant in the assault as a matter of law and therefore it was harmless error to omit the nonparticipant element from the instructions.

## II

Goodrich argues that the court's failure to give her proposed instruction on self-defense resulted in the jury being unable to fairly evaluate her claim of self-defense based on her subjective point of view at the time of the shooting. Goodrich relies on *State v. Allery*, 101 Wn.2d 591, 682 P.2d 312 (1984). In *Allery* the defendant shot and killed her husband when he was in her home in violation of a restraining order. The defendant testified that the victim said he was going to kill her and that she thought he was getting a knife from the kitchen. The trial court instructed the jury that "[t]he slayer may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the slayer at the time." *Allery*, 101 Wn.2d at 593. Reversing, the Supreme Court held that without additional instructions this instruction did not

---

[3]In *Langford* the court noted that the definition instruction did mention the "not a participant" element. Nothing in the opinion indicates that factor was considered significant. *Langford*, 67 Wn. App. at 579 n.4.

make the subjective self-defense standard " ' "manifestly apparent to the average juror." ' " *Allery*, 101 Wn.2d at 595 (quoting *State v. Painter*, 27 Wn. App. 708, 713, 620 P.2d 1001 (1980), *review denied*, 95 Wn.2d 1008 (1981) (quoting *State v. Fischer*, 23 Wn. App. 756, 759, 598 P.2d 742, *review denied*, 92 Wn.2d 1038 (1979))). "The instruction is inadequate because it does not instruct the jury to consider the conditions as they appeared to the slayer, *taking into consideration all the facts and circumstances known to the slayer at the time and prior to the incident.*" (Italics ours.) *Allery*, 101 Wn.2d at 595 (citing *State v. Wanrow*, 88 Wn.2d 221, 235-36, 559 P.2d 548 (1977)).

The trial court gave the standard self-defense instruction, new WPIC 17.02 (Supp. 1986). WPIC 17.02 was redrafted to take into account the subjective factors required by *Allery*. WPIC 17.02 comment (Supp. 1986).[4] The instruction contains almost the same phraseology required by *Allery*. While Goodrich's proposed instruction is more detailed, the instruction given correctly states the law and allowed Goodrich to argue her case. We hold that WPIC 17.02, as modified, correctly instructed the jury on the subjective standard of self-defense. .

## III

■ Goodrich argues that her assault conviction merged with the homicide and thus precludes application of the felony murder rule and her conviction for second degree murder. This argument has previously been rejected by our Supreme Court.

[D]efendant asks us to abandon the felony murder doctrine whereby, as here, an assault is the predicate felony for second

---

[4]We note that the new version of WPIC 17.02 also allows the court to properly instruct the jury on the application of battered woman's syndrome to a claim of self-defense. "In order to submit the defense to the jury, the defendant must show that she perceived imminent danger, based on some threatening behavior or communication by the victim at the time of the incident in question." WPIC 17.02 comment (Supp. 1986) (citing *State v. Walker*, 40 Wn. App. 658, 700 P.2d 1168, *review denied*, 104 Wn.2d 1012 (1985)).

In *Allery* the Supreme Court joined other jurisdictions in holding that expert testimony on battered woman's syndrome is admissible. "This evidence may have a substantial bearing on the woman's perceptions and behavior at the time of the killing and is central to her claim of self-defense." *Allery*, 101 Wn.2d at 597.

degree felony murder, claiming it violates U.S. Const. amends. 5, 8 and 14 and Const. art. 1, §§ 3, 12 and 14. We have consistently refused this invitation and refuse it once more.

*State v. Crane*, 116 Wn.2d 315, 333, 804 P.2d 10 (citing *State v. Leech*, 114 Wn.2d 700, 712, 790 P.2d 160 (1990); *State v. Wanrow*, 91 Wn.2d 301, 588 P.2d 1320 (1978); *State v. Thompson*, 88 Wn.2d 13, 558 P.2d 202, *appeal dismissed* (for want of substantial federal question) 434 U.S. 898 (1977)), *cert. denied*, ___ U.S. ___, 115 L. Ed. 2d 1033, 111 S. Ct. 2867 (1991).

Goodrich argues that previous decisions declining to apply the "merger doctrine" to felony murder based on an underlying assault must be reconsidered in light of the Sentencing Reform Act of 1981 (SRA). By arguing that the merger doctrine is compelled by considerations of the purpose or policy of the SRA (in this case, sentence proportionality), Goodrich impliedly concedes that it is not required by statutory construction.

> We recognize that the consequences under our statutes of death resulting from an assault — criminal liability for felony-murder — are harsh. Nonetheless, we are now firmly convinced that adoption of the merger doctrine is not compelled either by principles of sound statutory construction or by the state or federal constitutions, and that adoption of the doctrine by this court would be an unwarranted and insupportable invasion of the legislative function in defining crimes.

*Wanrow*, 91 Wn.2d at 303. For the same reason, we refuse any modification of the existing law not required by constitutional principles or sound statutory construction.

Goodrich argues that a 1987 amendment to RCW 9A.36-.021(1)(a) requires a reevaluation of *Wanrow*. The amendment added to second degree assault an intentional assault resulting in the reckless infliction of substantial bodily harm.[5] Goodrich argues that the statute now allows a person

---

[5]RCW 9A.36.021(1)(a) provides:

"(1) A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree:

"(a) Intentionally assaults another and thereby *recklessly* inflicts substantial bodily harm[.]". (Italics ours.)

who unintentionally kills to be charged with manslaughter or felony murder. That was true when *Wanrow* was published. *Wanrow*, 91 Wn.2d at 312. Furthermore, the Supreme Court's decision in *Crane*, 116 Wn.2d at 333, postdates the amendment and again refuses to apply the merger doctrine to an underlying charge of second degree assault.

■ Next Goodrich argues that the unfettered discretion of prosecutors to charge manslaughter or second degree murder based on the same criminal act violates equal protection. This argument has been previously rejected. *Wanrow*, 91 Wn.2d at 310-12. The *Wanrow* court also rejected the argument that the operation of the felony murder rule impermissibly presumes an intent to kill. *Wanrow*, 91 Wn.2d at 311-12.

Finally, Goodrich argues that two recent United States Supreme Court cases, *Enmund v. Florida*, 458 U.S. 782, 73 L. Ed. 2d 1140, 102 S. Ct. 3368 (1982) and *Solem v. Helm*, 463 U.S. 277, 77 L. Ed. 2d 637, 103 S. Ct. 3001 (1983), require reconsideration of *State v. Wanrow, supra*, and the other decisions declining to apply the merger rule. This court has already considered and rejected the applicability of these cases.

> We do not believe that two recent United States Supreme Court cases cited by [defendant] require, as he claims, reconsideration of *Wanrow*. These cases involve principles related to disproportionate sentences impermissible under the Eighth Amendment. Neither case involves merger principles and the cases are inapposite to the issues and rationale of *Wanrow*.

(Citations omitted.) *State v. Heggins*, 55 Wn. App. 591, 601 n.6, 779 P.2d 285 (1989).

Affirmed.

WEBSTER, C.J., and SCHOLFIELD, J., concur.

Review denied at 123 Wn.2d 1029 (1994).